UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| Michael A.J. Mays, (M-50516), | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | No. 24 C 5953 |
| v. | ) |  |
|  | ) | Hon. Jeffrey I. Cummings |
| Lieutenant Jaburek, et al., | ) |  |
|  | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## ORDER

Plaintiff Michael Mays' second amended complaint [15] may proceed as detailed in the accompanying statement. The Clerk is directed to (1) file Mays' second amended complaint [15]; (2) terminate all remaining defendants; and (3) update plaintiff's address to the Menard Correctional Center address reflected in plaintiff's amended complaint, (Dckt. #15). Latoya Hughes is a defendant in this matter for the sole purpose of assisting in identification of the Jane Doe grievance officer whom Mays wishes to sue. Mays need not do anything further at this time, except that he must promptly update his address if it changes while this case is open. If he does not keep the Court informed of his address, this lawsuit may be dismissed with no further notice. A separate order will be issued to initiate service of process on the defendant. The Clerk shall mail a copy of this order and the service order to plaintiff at his Menard address. The previously set May 30, 2025 tracking status hearing is stricken and re-set to September 12, 2025 at 9:00 a.m. (to track the case only, no appearance is required).

## STATEMENT

Plaintiff Michael Mays, currently imprisoned at the Menard Correctional Center, filed this suit under 42 U.S.C. §1983 alleging that his right to due process was violated in prison disciplinary proceedings while he was incarcerated at the Stateville Correctional Center. His second amended complaint (SAC) is before the Court for screening pursuant to 28 U.S.C. §1915A, and for the reasons discussed below, he may proceed on his claim against defendants Warden Truitt, Lieutenant Jaburek, J. Rios, Brett Carnahan, Frances Milsap, Davida Dixon, Adwale Kuforiji, and the Jane Doe grievance officer.

The Court construes plaintiff's complaint liberally and accepts the following allegations as true. On June 22, 2022, the Internal Affairs Office at Stateville Correctional Center, where he was incarcerated at the time, summoned Mays for a drug test. (Dckt. #15 at 6). He provided a urinalysis sample for defendants Lieutenant Jaburek and Mr. Milsap, which tested positive for drugs. (*Id.*). His cellmate was also tested, but that sample was negative. (*Id.*).

On June 28, 2022, defendant Carnahan served Mays with a disciplinary ticket accusing Mays of violating "Dir. 203, drugs and paraphernalia." (*Id.*). "Within the next few days," plaintiff spoke to his mental health counselor and admitted that he had used drugs. (*Id.*). He also admitted his guilt to the Warden. (*Id.*). Sometime after, he appeared before the adjustment committee, presided over by defendant Davida Dixon and Lieutenant Jackson, pled guilty, and was sentenced to 14 days of segregation. (*Id.*).

About two weeks after his release from segregation, Internal Affairs summoned Mays again. (*Id.*). Defendant Lieutenant Jaburek asked him if he knew anything about K-2 found in his cellmate's property. (*Id.*). Mays responded that he did not and signed a written statement to that effect. (*Id.*). The following day, on July 15th, 2022, he was served with another disciplinary ticket, prepared by defendant J. Rios and witnessed by defendant Brett Carnahan. (*Id.* at 8). The ticket charged him, once again, with violating the facility's prohibition on drugs and paraphernalia. (*Id.*). Mays alleges that "this was based off the June 22d drug test I failed and it had on this ticket in fine print I failed drug [urinalysis]." (*Id.*). Mays claims he was not "written up for positive paper for drugs on my July 15th ticket," only for having failed the urinalysis on June 22 that he had already been punished for. (*Id.*). The Court presumes that the "paper for drugs" is a reference to the substance found in his cellmate's property, given the common problem of drug-stained paper in carceral settings.

Mays appeared before the adjustment committee again (he does not say precisely when). (*Id.*). Defendants Frances Milsap and Davida Dixon presided over the hearing, in which Mays argued that he was never administered another urinalysis test that he could have failed to bring about the charge in the July 15th ticket. (*Id.*). Mays avers that "not once" at the hearing was he questioned about a positive drug test, and though he does not say what he was questioned about, Mays alleges sufficient context for the Court to infer the hearing was about the drug-stained paper found in his cellmate's property. The committee sentenced Mays to four months of segregation and a disciplinary transfer to the Pontiac Correctional Center. (*Id.*). Warden Charles Truitt "signed off" on the punishment resulting from both disciplinary proceedings.

Mays alleges that he filed a grievance about his disciplinary proceedings, which was reviewed by a Jane Doe grievance officer who concluded that "the ticket was in error due to a typo of positive drug test… it should've been 'positive paper for drugs.'" (*Id.*). Mays avers that he "was not written up for positive paper for drugs on my July 15th ticket." (*Id.*). Moreover, Mays evidently appealed this finding, and claims that defendant "Springfield adjustment committee [member] Adewale Kuforiji," whom the Court presumes is the person who decided his appeal of the committee's decision, noticed the discrepancy with his disciplinary tickets but also falsely characterized it as a "typo." (*Id.*). As a result, Springfield "expunged the June 28th ticket." (*Id.*).

Mays does not describe the conditions of his four months of segregation before his transfer to Pontiac, but alleges that, at Pontiac, he was in a "seg[regation] cell for months" with no opportunities for yard time, which the Court interprets (at this juncture) as a denial of all outdoor recreation. (*Id.* at 7). Mays claims that he was "cut off from all social contact for two years" such that his mental health declined and he now has "issues being around other people." He was in a cell with the light always left on and heard banging and yelling from neighboring

cells at all hours.  (*Id.*).  He had no opportunity to participate in prison rehabilitative or vocational programs.  (*Id.*).

The Court concludes that Mays has adequately alleged that the punishment meted out by the disciplinary committee imposed an "atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  When evaluating whether conditions rise to this level, courts look to the "combined import of the duration of the segregative confinement *and* the conditions endured." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (emphasis in original).  The Court understands Mays' complaint to allege that he was in some form of segregation for two years, with the lights on at all times, and without human contact.  These conditions are similar to those in *Wilkinson v. Austin*, in which the Supreme Court held that placement in a federal supermax prison posed an atypical and significant hardship because "almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room" and placement there was "indefinite."  545 U.S. 209, 224 (2005).

As for plaintiff's claim that he was denied due process, the minimum process required in prison disciplinary proceedings includes (1) advance written notice of the charge; (2) the right to appear before an impartial panel; (3) the right to call witnesses and present documentary evidence if prison safety allows; (4) a written statement of the reasons for the discipline imposed, supported by some evidence.  *Wolff v. McDonnell*, 418 U.S. 539, 563–69 (1974).  Generously construed, the Court interprets Mays' allegations to claim that he was not provided notice of the accusations before his second disciplinary proceeding: his disciplinary ticket said he was being disciplined for a failed drug test, which he had already been punished for, and that the hearing was actually about the drug-stained paper found in his cellmate's property.  Such a lack of notice would have necessarily deprived him of the opportunity to present evidence or call witnesses, since he could not have been prepared to defend against the actual charges—as Mays alleges, his only argument at the hearing was that the second disciplinary ticket was in error because he had already been punished for failing the drug test.

As for the proper defendants, a plaintiff must plead that a given defendant "caused the constitutional deprivation at issue" or "acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (cleaned up).  "Lawsuits against individuals require personal involvement in the constitutional deprivation to support a viable claim." *Id*.  Mays may proceed against the defendants who were allegedly involved in the second disciplinary proceedings or its appeal, or who acquiesced in its outcome.  That includes Lieutenant Jaburek, who interviewed Mays about the drugs found in his cellmate's property, and J. Rios and Brett Carnahan, who were involved in preparing the second disciplinary ticket.  He may also proceed against defendant Ms. Milsap and counselor Davida Dixon, who presided over the hearing on the second disciplinary ticket.  Mays has also stated a colorable claim against defendant Kuforiji, the official who adjudicated his appeal of the disciplinary proceeding and allegedly addressed the deficiency in the second ticket by expunging the first punishment (which, of course, did nothing to correct the denial of due process in the second proceeding).  Mays may also proceed against the Jane Doe grievance officer who handled his grievance regarding his disciplinary proceedings and came to the same conclusion as the

official who handled his appeal of the disciplinary judgment. Finally, he may proceed against Warden Truitt, who approved both instances of discipline that charged him for the same offense, even though the second was about something else.

Defendants Mr. Milsap of internal affairs (not to be confused with the official who presided over his hearing, Frances Milsap), the Jane Doe mental health supervisor, and the Jane Doe mental health counselor are dismissed from this action. Mays has not sufficiently involved their involvement in the second, allegedly deficient disciplinary process—he alleges only their involvement in the first hearing that involved the failed drug test. He does not state enough facts for the Court to infer that they were responsible for the second hearing or that they knew about the alleged deficiencies in that proceeding.

The Court names Latoya Hughes, Director of the IDOC, as a nominal defendant in this action for the purpose of identifying the Jane Doe grievance officer. The Court authorizes limited discovery into the identity of this defendant as follows. Once Hughes is served with the complaint, Mays must send Hughes' counsel interrogatories (a list of written questions) to obtain information about the identify of this official. Mays should keep a copy for himself and mail the interrogatories, which should include as much information as he has to help identify the Doe defendant, such as her name (or a portion), her job titles, physical description, where and when Mays encountered her, and the dates and times of any relevant interactions, to Hughes' attorney. After Mays learns the identity of the Jane Doe grievance official, he must seek leave to file an amended complaint that names her in the caption and provides facts in the body of the complaint regarding what the defendant did to violate his rights. The Court advises Mays that there is a two-year statute of limitations for §1983 actions in Illinois and that he must identify and serve the defendant before the statute of limitations expires. *See, e.g., Ray v. Maher*, 662 F.3d 770, 772–73 (7th Cir. 2011).

The Court instructs Mays to file all future papers concerning this action with the Clerk of this Court in care of the Prisoner Correspondent. Every document he submits must include a certificate of service indicating when and to whom he sent it. Any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions may be disregarded by the Court or returned to him.

As a final note, the Court admonishes Mays that, in the future, he should write using larger handwriting and make every effort to write clearly so that the Court can understand what he was saying. His handwriting in his complaints has been very small and difficult to understand. Any future filings that are similarly difficult to read will be rejected so that Mays can re-file them with legible handwriting.

**DATE: July 15, 2025**

**Jeffrey I. Cummings
United States District Court Judge**

4